UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ARTHUR ENGLISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00089-SEB-TAB |
| | ) | |
| BEACON ROOFING SUPPLY, INC. | ) | |
| doing business as NORTH COAST | ) | |
| ROOFING SYSTEMS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on Defendant's Motion for Summary Judgment [Docket No. 33], filed on December 12, 2014, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Arthur English, proceeding *pro se*, has brought this action against Defendant Beacon Roofing Supply Inc. ("Beacon") d/b/a North Coast Roofing Systems ("North Coast"), alleging that he was discriminated against because of his race (African-American) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. Plaintiff failed to respond to Defendant's summary judgment motion, despite having been granted multiple extensions of time to do so. For the reasons detailed in this entry, we GRANT Defendant's Motion for Summary Judgment.

**Factual Background**

North Coast is a regional distributor of roofing and building materials for Beacon. North Coast serves as Beacon's affiliate in Indiana, as well as in several other states. As

a distributor, North Coast employs, among other positions, commercially licensed drivers to operate forklifts and crane-trucks. North Coast at times contracts with temporary staffing agencies to provide temporary workers, particularly temporary drivers, because of seasonal fluctuations in business and changes in permanent staff capacity.

**Plaintiff's Hiring as Temporary Driver**

In the spring of 2012, North Coast's Indianapolis branch experienced a typical seasonal increase in business. At that same time, on May 11, 2012, one of the branch's drivers resigned. As a result, North Coast's Branch Manager for the Indianapolis area, Pete Sovinski, contacted Express Pros, an Indianapolis temp agency, and requested a temporary driver. Express Pros assigned one of its employees, Plaintiff Arthur English, to the position. At all times relevant to this litigation, Mr. English was an employee of Express Pros who was temporarily assigned to North Coast. Throughout his temporary assignment with North Coast, Mr. English remained a W-2 employee of Express Pros.[1]

**Plaintiff's Duties**

On May 21, 2012, Mr. English first reported to North Coast as a temporary employee. He was assigned to North Coast's Post Road facility and reported directly to Warehouse Supervisor Bill Foddrill. As a temporary driver, Mr. English was responsible for delivering North Coast products from the company's gated Indianapolis facility to

---

[1] North Coast does not dispute that for purposes of this Title VII lawsuit, it is considered an "employer" of Mr. English under the statute, however. *See, e.g., Piano v. Ameritech/SBC*, No. 02-C-3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003) ("This court concludes that the joint employer theory should apply in cases in which an individual is employed by a temporary employment agency, but suffers discrimination by the employer to which he or she is assigned, where that employer exerts a significant amount of control over the individual.").

various customers or job sites throughout Indiana.  Mr. English was not provided a key to the gated area of the facility at any point during his temporary assignment with North Coast because his job duties did not require him to arrive before facility managers like Mr. Sovinski and Mr. Foddrill to open the gated area, so he did not need a key.  If Mr. English returned from a delivery after working hours, Mr. Foddrill would meet him at the facility to open the gate.

Mr. Foddrill managed all of the drivers, including temporary employees like Mr. English, and was responsible for assigning the drivers particular deliveries.  Mr. Foddrill supervised Mr. English's work, trained him, and assigned him various deliveries and tasks around the warehouse.  Mr. Foddrill did not train Mr. English to operate North Coast's forklift because, during Mr. English's first week assigned to North Coast, Mr. Foddrill observed him operating the company's forklift around the warehouse and determined that he did not need further training.

**Co-Workers' Duties**

Mr. English worked with North Coast's two permanent drivers, Tim Hinds and Dino Paoletti, during his assignment with North Coast.  Mr. English also worked with Mr. Foddrill's brother, Darryl Foddrill, who "worked strictly in the warehouse, stocking [and] unstocking shelves, [and] loading and unloading trucks."  Dkt. No. 34-2 at 22-23.

Mr. Hinds, a white male, came to North Coast originally as a temporary employee from Express Pros.  He was hired on May 7, 2012, approximately two weeks before Mr. English started working for North Coast.  During the two-week period before Mr. English began his assignment with North Coast, Mr. Hinds was trained on operating North

3

Coast's crane by the regular crane operator. Shortly after that training, Mr. Hinds was hired as a full-time employee, doubling as both a driver and crane operator for North Coast, which were the same responsibilities the employee who held the position before him had performed. Mr. Hinds's duties as a crane operator were different than those of the drivers. For example, Mr. Hinds's duties required him to arrive at work before the facility managers, which meant he needed to use a gate key. After Mr. Hinds was trained, Mr. Sovinski determined that North Coast did not need a second crane operator, and thus, did not train Mr. English on crane operation duties.

**Plaintiff's Behavioral Issues**

Mr. English worked as a temporary driver for North Coast for four months, from May 21, 2012 to September 21, 2012. During that period, Bill Foddrill noticed problems with Mr. English's on-the-job comprehension, fellowship with other employees, and aggression. Specifically, on several occasions, Mr. Foddrill instructed Mr. English to work in a certain manner and Mr. English either talked back to him or refused. Around this same time, Mr. English began secretly recording conversations that he had with Mr. Foddrill and Mr. Sovinski, among others. Mr. English neither asked permission to make such recordings nor informed any North Coast employees that they were being recorded. These recordings were disclosed for the first time during the course of discovery in this case and reflect Mr. English's refusal to take instruction from Mr. Foddrill.

Other employees, including Mr. Paoletti, Darryl Foddrill and Mr. Sovinski, also became aware of issues with Mr. English's behavior, particularly with regard to displaying aggression in the workplace. In particular, Mr. Sovinski observed Mr. English

acting aggressively during a company cookout over the branch's on-site grill. Mr. English later borrowed the grill without talking to Mr. Sovinski before loading it in his truck. Mr. Sovinski received several complaints from customers about Mr. English's negative attitude as well.

**Plaintiff's Last Day Working for Defendant**

On September 21, 2012, while reviewing Mr. English's timecards, Mr. Foddrill noticed that Mr. English had marked "no lunch" for the previous day. Mr. Hinds had previously informed Mr. Foddrill and Mr. Sovinski that he had eaten lunch with Mr. English on September 20, 2012. As a result, Mr. Sovinski instructed Mr. Foddrill to change Mr. English's September 20th timecard to reflect a thirty-minute lunch.

Later that day, Mr. English confronted Mr. Foddrill in the warehouse about the change to his timecard. According to Mr. Foddrill, Mr. English's actions appeared to be aggressive and confrontational. Mr. Sovinski overheard the dispute from his office and went into the warehouse to investigate. Mr. Sovinski became concerned about Mr. English's behavior when he saw him standing very close to Mr. Foddrill and acting in a manner Mr. Sovinski perceived as confrontational. In an attempt to diffuse the situation, Mr. Sovinski told Mr. English that they would resolve the timecard issue later. Mr. English at first refused to leave the property, but eventually left the premises. After Mr. English left, Mr. Sovinski contacted Express Pros, recounted the details of the confrontation, and asked them not to return Mr. English to the North Coast assignment. However, although Mr. English did not return to North Coast, he apparently was not terminated from his employment with Express Pros as a result of the incident.

5

**The Instant Litigation**

On October 25, 2012, Mr. English filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was discriminated against as follows: (1) he was not provided training to operate North Coast's crane truck or forklift; (2) he was not hired as a full-time North Coast employee even though Darryl Foddrill gave him positive feedback; and (3) he was terminated "after [he] asked about a time card issue." Dkt. No. 34-5. The EEOC issued a Dismissal and Notice of Rights on October 24, 2013.

On January 21, 2014, Mr. English filed his Complaint alleging that he was discriminated against because of his race, in violation of Title VII and § 1981. Specifically, Mr. English claims that he was denied the opportunity to train on and operate the crane; that he was denied a gate key and forced to park in a different location; that he repeatedly had his time card altered to reflect fewer hours than he actually worked; that he was publicly reprimanded for work done by his team while the Caucasian team members were not; and finally, that although Mr. Hinds was hired as a full-time employee after only six weeks, Mr. English was told he could not be considered for hire until after 90 days, and then, shortly after he had been working at North Coast for 90 days, he was asked not to return following the confrontation regarding the timecard issue.

**Plaintiff's Lack of Response to Defendant's Summary Judgment Motion**

On December 12, 2014, North Coast filed its motion for summary judgment. Notice was sent that same day to Mr. English regarding his right to respond to and submit evidence in opposition to the motion. On December 19, 2014, Mr. English filed his first

motion for extension of time to February 23, 2015 to file his response. That request was granted. On February 6, 2015, Mr. English sought a second extension to April 1, 2015, which the Court again granted. On March 26, 2015, Mr. English filed a third motion for extension of time, requesting until June 24, 2015 to submit his response. The Court granted in part his request, enlarging the deadline to respond to the summary judgment motion to April 21, 2015. However, Mr. English failed to file a response by that deadline.

Because Mr. English has failed to answer or object to North Coast's statement of facts, we accept as undisputed movant's well-supported factual allegations. *See* Fed. R. Civ. Pro. 56(c); Local Rule 56-1(f). Additionally, having failed to respond to North Coast's summary judgment motion, the Court has before it no argument or evidence to dispute the evidence and argument proffered by North Coast or raising any issues of material fact that would preclude summary judgment.

## Legal Analysis

### I.   Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court normally construes all facts in a light most favorable to the non-

moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, a non-moving party may not rest solely on its pleadings to defeat summary judgment. *See* Fed. R. Civ. Pro. 56(c). Accordingly, where, as here, a party fails to oppose a summary judgment motion, "the court will assume that the facts as claimed and supported by admissible evidence by the movant are admitted without controversy …." Local Rule 56-1(f).

## II.   Discussion

Mr. English alleges that he was discriminated against because of his race in violation of both Title VII and 42 U.S.C. § 1981. The substantive standards and methods of proof that apply to claims of racial discrimination under Title VII also apply to claims under § 1981. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999) (citations omitted). A plaintiff may establish a case of discrimination using either the direct or indirect method of proof.

Under the direct method of proof, a plaintiff is required to show "that an adverse employment action was taken against him because of intentional discrimination, using either direct or circumstantial evidence." *Garcia v. City of Chi.*, 533 Fed. App'x 666, 667 (7th Cir. 2013) (citing *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008)). There is no direct evidence of racial animus here, such as an "outright confession of discriminatory intent." *Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 947 (7th Cir. 2013). However, Mr. English could still prevail using circumstantial evidence, such as "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or

8

not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; and (3) evidence that [he] was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014).

Alternatively, to establish a prima facie case using the indirect method as set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973), a plaintiff must establish that: (1) he was a member of a protected class; (2) he adequately performed his employment responsibilities; (3) despite adequate performance, he suffered an adverse employment action; and (4) he received different treatment than similarly situated persons who were not members of the protected class. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007) (citation omitted). If the plaintiff is able to make such a showing, the burden shifts to the employer to come forth with a "legitimate, non-discriminatory reason" for its actions. *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). If it is able to do so, it will prevail unless the plaintiff presents evidence that the employer's given reason is merely a pretext for discrimination. *Id.*

The majority of Mr. English's allegations can be dispensed with quickly as they do not rise to the level of adverse employment actions. Regardless of the method of proof used to prove discrimination, a plaintiff must "show [he] suffered an adverse employment action as a result of [his] employer's alleged discrimination …." *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014). To constitute an adverse employment action, "an employee must show some quantitative or qualitative change in the terms or conditions of

9

his employment or some sort of real harm." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (quotation marks omitted). Here, Mr. English complains that he was not "given a gate key"; that he was denied an opportunity to train on North Coast's crane; that he was not "allowed to park in the company parking lot"; and that he was "singled out by his supervisor" and "subjected to criticism for allegedly poor work that was done by the entire team." Compl. ¶¶ 12-15, 17. Even if true, none of these perceived slights were sufficiently serious to significantly alter the terms and conditions of Mr. English's employment at North Coast. *See, e.g.*, *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (collecting cases and holding that unfair reprimands, denial of parking permit, and assignment of additional job responsibilities did not constitute adverse employment actions); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (holding that altered work hours, negative performance evaluations, and unfair reprimands were not adverse employment actions).

Mr. English fares no better on his contention that North Coast's failure to hire him as a permanent employee was the result of unlawful discrimination. The only evidence Mr. English cites in his Complaint to support this claim is the fact that Tim Hinds, a Caucasian temporary employee who was assigned to North Coast approximately two weeks before Mr. English started, was subsequently hired to work at North Coast on a permanent basis and Mr. English was not. But Mr. English has made no showing that Mr. Hinds is similarly situated to him such that the disparity in treatment they received would be sufficient to establish discrimination under either method of proof.

A similarly situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). To determine whether two employees are similarly situated, courts are to look at all relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Here, the undisputed facts establish that Mr. English and Mr. Hinds are not similarly situated. First, they did not perform the same duties. Mr. Hinds began working at North Coast two weeks before Mr. English. In those two weeks, Mr. Hinds was trained to operate North Coast's crane by the company's outgoing crane operator. That employee had left the company by the time Mr. English began working at North Coast and had fully trained Mr. Hinds before he left. Mr. English did not receive training from North Coast on crane operation when he started his assignment with the company because he was needed to drive other trucks and it had been determined before he started that North Coast did not need two crane operators. The fact that Mr. Hinds performed in a dual position (crane operator and truck driver) while Mr. English was responsible only for driving North Coast's regular trucks is sufficient to render the two employees unsuitable for comparison as it is undisputed that Mr. Hinds's training and ability to operate the crane was a consideration in the company's decision to offer Mr. Hinds permanent employment.

In addition, there is no evidence that Mr. Hinds exhibited behavior that was similarly disruptive and insubordinate as that of Mr. English, one example of which was Mr. English's confrontation with Mr. Foddrill regarding the time card discrepancy. Mr. English himself conceded in his deposition testimony that he frequently questioned Mr. Foddrill's instructions and that his manner could be perceived as aggressive, while Mr. Hinds was a cooperative employee. This is further evidence that Mr. Hinds is not a suitable comparator, and thus, North Coast's unequal treatment of them does not serve to bolster Mr. English's discrimination claims under either method of proof.

Moreover, North Coast has put forth legitimate nondiscriminatory reasons for all of its actions that have not been disputed by Mr. English nor shown to be lies or merely pretext for discrimination. When North Coast hired Mr. Hinds for a permanent position, he could already perform the duties of a crane operator because of training he had received before Mr. English even began working at North Coast. Because the company determined that it did not need two crane operators among its three truck drivers, North Coast was faced with a decision whether to hire Mr. Hinds, who was already trained as a crane operator, or to hire Mr. English, whom it would then have to train. Nothing about the fact that North Coast chose the most expedient and cost-effective route by hiring Mr. Hinds raises suspicion about the company's motives. For these reasons, Mr. English's discrimination claim based on North Coast's hiring of Mr. Hinds as a permanent employee fails.

Nor is there any indication that North Coast's proffered reason for requesting that Mr. English not be returned to his assignment with the company, to wit, that he routinely

exhibited insubordinate behavior that culminated in a confrontation with Mr. Foddrill over the timecard discrepancy, is pretextual.  Mr. English conceded in his deposition testimony that his manner could be perceived as aggressive and that he did confront Mr. Foddrill about the timecard issue.  Although Mr. English alleges in his Complaint that the company wrongly accused him of falsifying his timecard, which resulted in his confrontation with Mr. Foddrill, it is not enough to show that the decision made by the company may have been wrong or misguided.  *E.g.*, *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) ("The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge.").  In short, the undisputed evidence in the record supports the conclusion that at the time North Coast requested that Mr. English not be returned to his job assignment, it honestly believed that his conduct was aggressive and threatening and sufficiently serious to justify dismissal from the temporary assignment.  There is simply no evidence of discrimination on the facts before us.

### III. Conclusion

For the reasons detailed above, we **GRANT** Defendant's Motion for Summary Judgment.  Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: _____06/01/2015_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

13

Distribution:

ARTHUR ENGLISH
12283 Slate Drive
Fishers, IN 46037

Alexander Phillip Will
FROST BROWN TODD LLC
awill@fbtlaw.com

Heather L. Wilson
FROST BROWN TODD LLC
hwilson@fbtlaw.com